Rivera v. Bainbridge. Mr. Bledsoe. May it please the Court. Good morning. Kevin Bledsoe on behalf of the appellants. The issue in this case is whether it was clearly established that officers who had a reasonable belief that they interrupted a burglary in progress are prohibited from entering the home to check for potential victims or additional perpetrators. And the answer to that question is no, that was not clearly established. It was not clearly established in March of 2011, and it's not clearly established now. In fact, numerous state and federal courts which have considered the question have all held that warrantless entries are justified on the basis of exigent circumstances when the police reasonably believe that a burglary is in progress or has recently been committed. Let me ask you a quick question just about the argumentation in the case. It felt to me a bit like the briefs were ships passing in the night because you're talking about exigent circumstances and burglaries in progress are recently concluded. Your opponent is talking about Bowie and protective sweeps incident to arrest. Has it always been your contention? Have you always been traveling under an exigent circumstances theory, or were you ever traveling under a protective sweep theory? And if no, to the last question, how is it that we got into protective sweep land here? I think that the stronger position and the better position is that the entry into the home was based on exigent circumstances because of the burglary. I think you can make an argument that you might have a Bowie sweep incident to arrest if someone is arrested on the front porch. But you know that's not the question that my colleague asked. He asked, have you always proceeded under the theory that it was exigent? I want to make sure you argued to the district court the same thing that you're arguing to us, which I take to be really an exigent circumstances based position. Yes. Fine. Yes, we did. Do the exigent circumstances go to the search after the initial search when they went in to check everything's okay, then it come out and they go in later? Well, there was an initial entry by the first officer, Officer Rabel. And what the undisputed facts are is that he, having reasonable suspicion that he had interrupted a burglary in progress, he opens the back door, which leads to a two by four, what's been referred to as a safe room. So opening that back door leads to basically another back door. And what he does, and you can see in some pictures that we put into our briefs, this is a 10 second entry where he simply opens the second back door, leaning in and announcing the presence of law enforcement. So that was justified. Further inside. Correct. Correct. So it was literally a 10 second, and the pictures are there in evidence, it was literally a 10 second announcement. Now, of course, the initial officer, Investigator Rabel, he doesn't have the bulletproof vest, and so they haven't accumulated a team to do the full entry. So the full entry that you see with the officers who have weapons drawn and are wearing bulletproof vests, and there are four of them, the full entry is then done, again, under exigent circumstances to check for additional perpetrators or potential victims, somebody that might need medical attention, somebody that might be held hostage. And again, I think that the evidence, excuse me, that the law at the time was pretty solid. There was pretty much a consensus that a burglary, particularly a fresh burglary, a burglary in progress, which is what they had reason to suspect, does explain or does create an exigent circumstances to check for the safety of the occupants that might be in the house. Well, I guess, in fairness, the district court says that you really didn't have any objective reason to believe that the burglary was still in progress, and there is this, there are sort of two lines of cases that I've seen. Some cases in the other U.S. courts of appeals say in progress, I think maybe, what, the 6th, 8th, 10th, 9th circuits, and then there are some state cases that seem to expand on that a bit to say, yeah, in progress or recently concluded, Colorado, North Carolina, Maryland, whatever. Do you, I mean, don't you sort of need that extension? Don't you need the recently concluded extension here? I don't think that the law requires in progress, although I think we have obviously a very strong evidence or suspicion that it is in progress because we have actual suspected burglars right in front of an unsecured back door. But when you look at the case and you try to do the clearly established analysis, yes, there are a lot of cases which it's seemingly just the suspicion of burglary alone without any evidence that this is an ongoing burglary or even a recently committed burglary. Nevertheless, there are, there's a finding of exigent circumstances. But surely, if not, if the burglary, if you had reason to believe the burglary had concluded a week ago. Correct. I mean, if you have a hypothetical, let's say, where the police are doing a stakeout of a house and they know that the burglars never entered into the home or they know the people in the home are safe for some reason, or again, your example, if they know that this burglary is two weeks, three weeks old, then that would mitigate against exigent circumstances. But that's not what we have here. So there really is, I think it sounds like your position is there are two pertinent exigent circumstances here relevant to a burglary. One, in progress. Two, recently concluded. Correct. The former, I suppose, to check for perpetrators. The latter, I suppose, to check for victims. Correct. I think that's fair. I think that it's notable in this case that the district court didn't have the benefit of the Supreme Court's decision in White v. Pauly when making its ruling. The White v. Pauly case actually came out about three weeks later because the district court's opinion really has that same flaw in that it failed to identify a case where an officer acting under similar circumstances was held to violate the Fourth Amendment. And what that means in a case like this is some binding precedent prior to March of 2011 from the United States Supreme Court, from the Eleventh Circuit, or from the Florida Supreme Court, that would have similar facts, meaning a case that involved exigent circumstances in the context of a burglary of a dwelling. Something that would give the officers notice that what they were doing, what they were about to do, was unconstitutional so that all but the plainly incompetent would know what they did was wrong. But in fact, if you do that analysis, if you look for the case law, not only are you going to find out that it's not clearly established that you can't go in the home, in fact there's a robust body of case law that the court has referenced in Florida, in other jurisdictions, that hold the opposite, that in fact reasonable suspicion of a burglary of a dwelling does in fact provide exigent circumstances. Is this house very big or is it a small house? It is, I mean, it's not a mansion, but it's not a small shack by any means. Clearly there are multiple rooms, and I think the evidence was that, again, when that back door opened, it opened to like a two-by-four smaller room, and there were, I think there was a studio where there was some recording equipment and then some back bedrooms as well. So there was certainly reason to be concerned that somebody needed to go through and make sure, again, that there's not burglars still in the home or maybe more importantly that there's not a victim, somebody being held hostage. All the reasons that every court that has analyzed this issue, I think it's pretty much uniformly, every court that's analyzed this issue has found exigent circumstances under circumstances where the officers reasonably believe that they interrupted a burglary in progress. And what about the downstream entries, the third, fourth, fifth, however many there were? I guess once you've seen the marijuana in entry two, right? Correct. I got to confess, and we can ask Mr. Haynes about this as well, I was surprised that there wasn't more law on this sort of plain view justification for the third, fourth, fifth, sixth entries. It looks like you guys are citing some unpublished decision of ours in some Mississippi cases. I just expected there would be more. Is that really all there is? Yeah, there's also the Florida Supreme Court case of Seibert v. State, 923 Southern 2nd, 460. So there is some law, but of course it would be the same analysis that the court would have to go through. Is there clearly established law that the reentries are improper? And the answer is no, you can't find the law that helps Mr. Haynes' side of the case. And yet, as the court had noted, there are certainly cases out there that support our position of the case. And that was because when they come into the house and they do see in plain view what is apparent contraband in plain view, the initial entries, once the individual's expectation of privacy in that sense has dissipated, that the officers can stay in. And it's not a kind of, I think the case law, I think it was the Mississippi case that the court was referring to. The issue is not how many times the police officers at that point cross the threshold or whether an additional officer comes in. The cases that are out there are counter to an argument that is clearly established that their reentries are improper. Did they know whose house this was? I guess Mr. Montanez or however you pronounce his name. No, no evidence that they knew whose house it was. Did he come up at some point while they were in there? He, I believe the evidence was that he was not there the entire time. Did he have a relative there? A relative who was his mother and maybe a co-owner of the house came there later on in the process after the entries and actually at the request of, her name was Miss Gregory, at the request of Miss Gregory, one of the officers brought her in briefly. So she did arrive eventually. Okay, thank you counsel. We'll hear now from Mr. Haynes. Thank you, Your Honor. May it please the court. Attorney Carlos Haynes on behalf of Mr. Montanez. Your Honors, if I may, I would like to address the issue that was brought up by Judge Newsom. The briefs do appear to pass in the night because based on our reading of the summary judgment and the arguments raised that they were alleging because of the arrest that they had a exigency, which is the second component of buoy, to determine if there were persons in there who could pose danger or were injured. What they've grossly overstated and what the lower court never determined is probable cause. This reasonable belief, and there's a litany of cases that I brought with me from within this circuit, says that in order for the warrant exception to apply in the burglary case, and Dockery v. Doyle is the most recent case by this court cited in 237 Fed Appendix 426, it clearly states that it requires probable cause plus exigent circumstances. The first part of the order. Are you talking about the arrest or the search of the house? I'm talking about the search of the house. Okay, let me just tell you this. Right now, you're welcome to argue it is persuasive authority, but an unpublished opinion can't clearly establish anything in this circuit. Yes, sir. I was about to go backwards because, you know, actually we'll start with the case that I'm very familiar with. It's called Moore v. Peterson. I was the actual attorney who represented Mr. Moore in this court in a very well-written in-bank opinion, cited four or five or six prior cases from within this circuit, as well as adopted my argument from the U.S. Supreme Court that reasonable suspicion does not allow an officer to get into the home. That was . . . I understand, but the question is whether probable cause to believe that a burglary has been committed or was being attempted allows an exigent circumstances quick search of the house. We don't have a decision directly in point. Judge Newsom's introductory question was, was that argued before the district court? I've looked back through the district court opinion and the district court has an extensive discussion about it and says basically, yes, you can go into the house as an exigent circumstance if you have a reason to believe there's a burglary in there. It was argued and brought to the attention of the district court. The question is whether it's clearly established either that you can't do that, even with probable cause to believe a burglary is going on, or your fallback position, I would assume, is that no reasonable officer could believe there was probable cause to say that a burglary had occurred or was occurring in the house. Correct, Your Honor. If I may give the court the published opinions, United States v. Franklin, 694 Federal 3rd . . . You don't need to cite them. Tell us what they say. Yes. In that case, this court said that the warrantless search of the home may be justified where both probable cause and exigent circumstance exist. Right. And it's not clearly established that probable cause to believe a burglary has occurred or is occurring is not an exigent circumstance. So, if they had probable . . . if they had arguable probable cause or a reasonable officer could have believed that a burglary had occurred there, then you lose because if they had probable cause to believe a burglary had occurred there, it's not clearly established they couldn't sweep the house. Your Honor, see, that again is combining two issues. The sweep is strictly . . . If they had probable cause to believe that a burglary had recently occurred in that house . . . Yes. It is not clearly established that they could not go through the house in a non-sweep fashion and determine if there were any burglars left in there or any occupants of the house who might be injured. You're going to lose if you say our law is clearly established that if there's probable cause to believe a burglary just took place, they can't go in without a warrant. That's not clearly established. Your Honor, what I will give this court is the cases that says probable cause doesn't get you inside of a house. It's probable cause plus exigent circumstance. And the plus exigent circumstance for present purposes because it's not clearly established against these officers is the belief that a recent . . . that a burglary has taken place. That is taking one set of facts to satisfy both prongs. No, it isn't. No, it is not. If they arrest them because they have probable cause . . . they have arguable probable cause to believe they committed a burglary, that's one thing. Yes, sir. And then the question is do they have arguable probable cause to believe that a burglary was committed in that house recently? And that the exigent circumstance means someone in there is in need of help or there's no time to secure a warrant. In this case, according to the facts of the case, he only saw two people. The reason why he thought there may be a burglary is because it was broad daylight noon, no cars in the home. In Florida, you have burglary of occupied dwellings. You have burglary of unoccupied dwellings. If no one is in the house, then there is no exigent circumstance. He entered the home the first time, announced himself as police, asked if anyone was in there. The cases that they have cited . . . He didn't go through the home the first time. The video . . . I asked the court to look at the video. The video speaks for itself. He went inside the foyer of the house. He announced himself. He did not hear, like the cases that are cited . . . You can't say that no reasonable officer could have believed that a burglar wouldn't say present. I mean, it doesn't . . . Come on, counsel. That's not what I'm alleging. I'm alleging that what I'm stating is that no reasonable officer would conclude that someone was in there that was in need of help when there's not even a vehicle. It doesn't have to be in need of help. It can be committing the burglary . . .  . . . taking or damaging property or harming someone inside. Or harming someone inside. Therefore, there has to be probable cause that someone is inside. Their own officer's statement was that he . . . That's just to you, counsel, and you haven't focused on it. If you don't want to, I promise I won't hassle you about this again. Yes, sir. But the law for qualified immunity purposes, because it's not clearly established otherwise, is if they had arguable probable cause to believe a burglary had recently occurred in that house, that's enough. They don't have to additionally have arguable probable cause to believe that in addition to a burglary, there might be someone injured in there. There might be someone being held in there. There might be a burglar in there. The fact that it was a recent burglary, the other circuits hold, that's enough. You don't have to also believe there's a third burglar in the house. Your Honor, I . . . Again, if I . . . I put forth Franklin Parker v. Allen, also out of this court. The Eleventh Circuit, again, says . . . Probable cause to believe the suspect has committed an offense and exigent circumstances which make obtaining a warrant imprudent. Just because there's probable cause of a crime, be it burglary or otherwise, does not give them permission to go into the sanctity of the home. But you understand the Chief's question is that the exigent circumstances here, so the other circuits say, so a DCA in Florida says, is that there is reason to believe that a burglary was recently committed. Good enough. Good enough for exigent circumstances. So I think what the Chief is asking you to do is to explain to us how, in the face of that law existing in other circuits in the DCA, it's clearly established against the officers. I will offer the court also United States v. $291,828. That was the case of Eleventh Circuit, 2008 opinion. This was a case in which they found that there were exigent circumstances because the burglar alarm had gone off multiple times. It was the middle of the night and the back door had been kicked in. That gives the exigent circumstance. It doesn't mean if the back door had not been kicked in, there wouldn't be. I mean, just because a circumstance exists in a case that finds no violation doesn't mean if it doesn't exist, there is a violation. It certainly doesn't clearly establish. In every case within this circuit that deals with a burglary that found exigent circumstance, there was physical evidence of the actual intrusion. Door breaking in, alarms going off, windows shattered. Counsel, you're flipping the burden. They don't have to establish that there is a case clearly establishing that they had the right to enter as the exact exigent circumstance of a recent burglary. You have to establish that we, the Supreme Court or the Supreme Court of Florida, has held that the belief that a recent burglary has taken place in the house is not enough. Held. Yes. Not infer, but read a holding out of one of those courts. The Mann. Mann is another case that was cited out of the, and City of Rivera, but Mann was one of the Florida cases that he cited. In that case, there was a recent history of burglary as well as forced entry, sign of forced entry that the court then said gave the probable cause. Plus, they saw the bent screen. They saw the door jamb unlocked. It's almost impossible for a court, any court to itemize each and every situation to say, okay, this puts you on notice. This puts you on notice. There are times in which you establish what is, and then you know your conduct doesn't match what is. In this case, exigent circumstances is more than just probable cause for the burglary. As I mentioned before, if it's an unoccupied dwelling, you don't get to go in because you have no reasonable belief that it is occupied. You don't get to go in to just investigate. You don't get to go in to see what was taken. You have the people in custody. Because he said himself when he went by the house the first time, and that's the point that the court brought on. Exigent is timing. That was his reason to believe, according to Officer Rabel, that the car, that there was no one at the house. The issue of exigency is timing, and it's also factual, and the lower court clearly pointed out two major distinctions about exigency. First, if he thought these people were committing a burglary, he did nothing when he first went by. He went to a corner store, met with an officer. The record shows that was about a two-minute delay before he came back. Secondly, he didn't even wait for other officers to come to determine, you know, to help him out. He went by himself, gun-pulled in the face of these people who were overnight guests. One of the persons lived there. This is the situation that leaves this court often too many times saying, I apologize to the family. This was a bad set of circumstances. If that was the homeowner or even the overnight guest, and he pulled his gun when a unmarked car, unmarked officer came up with his gun pulled to his face, we're here doing a whole nother tragic, I'm sorry type of opinion. He had the right to go in and make that sweep, whatever it was, or stick his head in the door and say sheriff's office. It was more than just a stick your head in the door. The video shows he physically went in. The first time. Yes. The first time was not okay because what was his exigency? The two people who he saw, he had in custody. They informed him that, hey, we stay here, we do music here. At that time, as a district court noted, he found no knife that the guy used to make a sandwich. He saw no pry marks. He simply was investigating what he thought was a burglary on a hunch. A burglary in and of itself does not give you permission to go in. The next point is, if it's so exigent, if someone is in there dying, he waited over five minutes before the other unit came in to go check. That kills exigency. Exigency is a factual determination that at least a jury. You've got to go in in less than two minutes. There hasn't been a bright line, but exigency means you have a need. You are concerned. It was two minutes and therefore it wasn't the first. No. When he rolled by your honor, it was two minutes before he came back. After he came out with the gun pulled and put them on the ground, which in and of itself is a de facto arrest that I don't have time to get into handcuff them. He waited for over five minutes before the rest of the people came to check on whoever may be in that house being hurt. The ones with the bulletproof vest. Yes, the ones with the vest. I don't blame him for waiting. Your honor, I'm not not saying I blame him for waiting. What I am saying is where's the agency? Because if someone's in there dying, if someone has been gagged, then yeah, you got to go in there as an officer with your gun to try to find that person that you believe allowed you to go in. Let's say another burglar was in there. Now they're stealing and ransacking everything and going out the front door because he's there in the back door waiting for over five minutes. The district court properly noted the demeanor and we're asking the court just to give Mr. Montanez the opportunity to have a jury of his peers try his case. You see these officers laughing, playing, back turned to the door. You know, that's not the standard. I see that error in district courts more than any other in qualified immunity cases. It's whether a reasonable officer in those circumstances could have not whether these reasonable officers did. Yeah, and I agree. And the reasonable officer standard is in first. It goes from this officer. All of them stated protect the suite. They get in the hands of skilled lawyers and now they say, well, let's see if we can try and go exigency. I just asked this court to look at the order. At no time does a district court find probable cause, which is what is necessary to even couple with exigent circumstances. Not no time in this circuit. Have you all ever recognized exigent circumstances alone allows you to go into a house recently in the Holloway decision. That's a 2009 opinion. You reiterate it again. Probable cause for the crime plus exigent circumstances. Only reasonable suspicion was determined by the lower court. And it was a tough decision that day. If you look at the opinion, I'm running out of time. I can finish this thought. The district court said that they were having a tough time finding reasonable suspicion because the person just was walking around the house, talking on the phone in broad daylight. There was nothing else. He didn't see anybody jimmying anything. He didn't see anyone attempting to get in. But given the reasonable suspicion, this court cannot today mix the two standards, reasonable suspicion and probable cause. Yes, sir. Two men who were outside Rivera and what's the other day? Copeland. Yeah, they're bringing their suit for violation. Their civil rights because they were arrested. I made it. They are arrested later. They were arrested immediately. I began to arrest when the officers came and went through the building when office they were. They were already. The video was so them in cuffs. You'll show Officer Rable coming in with the gun pointed and initially handcuffing them. That's an arrest. That's not a detention. That's not a Terry stop. And they were right under the hang of the door like the front door that they were standing at. They were still covered by the overhang of the house. They were in that area when that officer pulled up at that point. That was an arrest, even though that's something that we may deal with. You know, later on, you all may see me again. Thank you. Thank you, Mr. Bledsoe. Now, four minutes. What the district court did find, and we agree with, is that a reasonable officer could conclude that Rivera and Copeland were committing a burglary. That was page 12 of the district court's order. The reason for that was . . . Was the door unlocked or open or something? I think in the light most favorable to the plaintiff in this case, the court should assume that the back door was shut. However, it is undisputed that this area, that there was a rash of daytime burglaries in the area. Yeah, but facts in the light most favorable to the plaintiff, was it locked? No, no. It absolutely wasn't locked. There's no question that it was unsecured. The only issue was whether it was ajar or not. But again, clearly, no doubt that there was a rash of daytime burglaries in this area, that there was one individual who himself acknowledges that he was acting in an anxious manner. He describes himself as being shaky and scared, that his anxiety was going crazy, with a cell phone in his hand, pacing in a slow direction on the outside of the house. And the officer knows that that is something that he has to be concerned of, that the person is acting as a lookout. Does that give exigent circumstances, because you have somebody calling on the telephone that's pretty close to the house? No, you have to consider the totality of the circumstances. You can't take any of the factors in isolation and say that, well, just because there was a rash of daytime burglaries, that that, you know, that's what does it. Or just because that there were pry marks on the door, or just because the individual . . . They discovered that later, right? Well, the district court indicated that he felt that the initial officer, Officer Rabel, who kind of leaned in through the front door and announced the presence, that he didn't notice it. But it was certainly noticed by the time the officers, the four officers that were in protective vests, by that time, they had discovered the knives that were in the pockets. There were two knives in the pockets of Mr. Rivera. There were fresh pry marks on the door that were consistent with those knives. And the individuals outside the door had IDs that didn't match the residents of the house. So, I think the district court was correct that a reasonable officer could conclude that this was a burglary. And again, the important part is, this would be a burglary in progress, as opposed to just simply a stale burglary. Well, is that right? I mean because the district court does say that a reasonable officer could have concluded that Rivera and Copeland were committing a burglary. But the district court also says, but they had been neutralized and that there was no objective fact that gave a reasonable officer a reason to believe that there was a third perpetrator. So, I mean I think really reading the district court opinion for all it's worth, you can say this was a past tense burglary that has been stopped. And I'm not saying necessarily that you lose because you've got cases that say that even for a fresh but concluded burglary, there may be exigent circumstances. But I just think we need to be careful about reading too much into what the district court said or didn't say. Sure, but I would say that there would be no reason for an officer having caught two suspected burglars just outside an unsecured home. That officer would say, I must have gotten all of them. I must have gotten the two. And since I have two, there couldn't possibly be three or four. Or because I have two, that must mean that nobody's inside injured or there's not a third being held hostage. All I mean to suggest is that I think you should be careful thinking that the district court statement that a reasonable officer could have concluded that these two were committing a burglary somehow cinches your case for you. I don't really think it does. Because I think there is an alternative explanation, namely that the district court gave, that yes, sort of was being committed but had been neutralized. Unlike all the other cases, we certainly have evidence that the burglary was, at the very least, fresh. Thank you. Thank you, counsel. We'll take up.